JANICE K. CAUDILL, APPELLANT, V. SURGICAL CONCEPTS, INC., ET
AL., APPELLEES.

460 N.W.2d 662

Filed September 28, 1990.   No. 89-1333.

Robert Kohorst, of Kohorst Law Firm, and Michael J.
Lehan, of Kelley, Kelley & Lehan, P.C., for appellant.

Michael S. Mostek, of McGill, Parsonage & Lanphier, P.C.,
for appellee Surgical Concepts.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

This is an appeal from the district court for Douglas County,
Nebraska. Plaintiff-appellant, Janice K. Caudill, claims
unemployment compensation benefits under the Nebraska
Employment Security Law, Neb. Rev. Stat. §§ 48-601 to 48-671
(Reissue 1988). After being discharged from her employment
with Surgical Concepts, Inc., she sought unemployment
compensation. The Nebraska Department of Labor claims
deputy found that Caudill was discharged for misconduct and
assessed a 7-week disqualification of benefits. She appealed to
the Nebraska Appeal Tribunal, which affirmed the decision of
the claims deputy. Caudill then appealed, on May 4, 1989, to the
Douglas County District Court, which affirmed the decision of

the appeal tribunal. This appeal followed.

Caudill was employed as an outside sales representative for Surgical Concepts from September 1, 1988, until January 21, 1989. She was hired away from her previous job by Thomas Roberson, the president and owner of Surgical Concepts. She was hired to sell surgical supplies throughout Nebraska and western Iowa and was supervised by Roberson directly.

Her job duties included making sales calls to customers in Kearney, Grand Island, Hastings, and Scottsbluff, as well as calling on local customers. She was informed that she would have to travel approximately three nights per month. She agreed to travel when she accepted the job.

Roberson claimed that she failed to make any trips to her assigned territory in western Nebraska. He testified that when he questioned her about traveling, she expressed concern about being a single woman traveling alone and indicated that she did not understand how to read a map. He also stated that she told him she was now attending school three nights per week. He believed that this was the reason she was not traveling. He also testified that she would not sell the company's entire product line despite being requested to do so.

Caudill testified that Roberson told her she would have to travel to western Nebraska two to four times per year and she planned to do so sometime before the end of February. She also stated that she was attending school the same number of nights as when she began her employment with Roberson and he was aware of her school schedule. She stated that her school schedule would not interfere with traveling for her job. She testified that she concentrated her sales efforts on the "big ticket items" rather than the smaller products, but tried to sell all company products. Caudill also testified that Roberson had complimented her on her job performance 3 weeks before she was discharged.

In late 1988, Caudill submitted a false expense receipt for $14.90. She indicated on the receipt that the expense was for lunch at Julio's with a nurse on November 1, 1988. Roberson noticed that she had higher lunch expenses than he had ever incurred while working in the local territory, and he checked with the nurse. The nurse informed him that she had not had

lunch with Caudill on that day or any other day.

Caudill testified that she had taken the staff of a doctors' office out to lunch and had spent $65. She stated that she knew Roberson would be angry because he was concerned about large expenses for entertaining, so she extended the $65 lunch out over time by fabricating $65 of other expenses. The $14.90 expense for lunch was one of these fabricated expenses.

Roberson testified that he had a conversation with Caudill in mid-January concerning her job performance. At that time he expressed his dissatisfaction with her lack of travel and failure to sell the entire product line. He also testified that he discussed the issue of lack of trust in her. It is unclear from the testimony whether Roberson specifically mentioned the falsified Julio's receipt to her. He gave her the opportunity to resign, and she refused. He then discharged her and sent her a letter detailing the reasons for discharge, including the falsified expense incident.

Pursuant to Neb. Rev. Stat. § 84-918 (Cum. Supp. 1990), appeals from the district court under the Administrative Procedure Act to the Supreme Court are reviewed de novo on the record if the district court proceeding was commenced prior to July 1, 1989.

Section 48-628(b) authorizes a disqualification from benefits for discharge due to misconduct of the employee. This court, in *Stuart v. Omaha Porkers*, 213 Neb. 838, 331 N.W.2d 544 (1983), has defined misconduct to include behavior that evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.

Caudill claims that the cited reason for discharge, the falsified expense report, was not the real reason for termination. Rather, she claims Roberson wanted to terminate her because he was upset about the amount of salary and commission he had agreed to pay her. This may be true; however, Caudill admitted she falsified the Julio's expense

receipt. Falsifying expense reports, regardless of the reason, is dishonest and is certainly a violation of acceptable standards of employee conduct and employer rules under *Stuart, supra*. Caudill's conduct in falsifying the records alone was enough to constitute "misconduct." The decision of the district court is affirmed.

AFFIRMED.